# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE RAYFORD, | **1:19-cv-00225-AWI-GSA-PC** |
| Plaintiff, | **FINDINGS AND RECOMMENDINGS, RECOMMENDING THAT THIS CASE PROCEED WITH PLAINTIFF'S EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANTS SHERMAN AND MILAM, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED FROM THIS CASE BASED ON PLAINTIFF'S FAILURE TO STATE A CLAIM** |
| vs. | |
| SHERMAN, et al., | |
| Defendants. | **(ECF No. 24.)** |
| | **OBJECTIONS DUE IN FOURTEEN (14) DAYS** |

I.     **BACKGROUND**

        Eugene Rayford ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On February 7, 2019, Plaintiff filed the Complaint commencing this action in the Sacramento Division of the United States District Court for the Eastern District of California.  (ECF No. 1.)  On February 15, 2019, the case was transferred to this court.  (ECF No. 6.)  On February 28, 2019, Plaintiff filed the First Amended Complaint as a matter of course.  (ECF No. 12.)

        On April 29, 2020, the court screened the First Amended Complaint and dismissed it for failure to state a claim, with leave to amend.  (ECF No. 14.)  On June 29, 2020, Plaintiff filed a

1

motion to exceed 25 pages in the Second Amended Complaint, and also lodged a proposed Second Amended Complaint.  (ECF Nos. 19, 20.)  On January 11, 2021, the court granted Plaintiff's motion and filed the Second Amended Complaint.  (ECF No. 23, 24.)

The Second Amended Complaint is now before the court for screening.  28 U.S.C. § 1915.

## II.   SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.   SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at California State Prison-Sacramento in Represa, California.  The events at issue in the Second Amended Complaint allegedly occurred at the

California Substance Abuse Treatment Facility and State Prison (SATF) in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants Stu Sherman (Warden), T. Cisneros (Chief Deputy Warden), Tommy Wan (Associate Warden), M. Hacker (Associate Warden), Captain B. Chapman, Captain A. Williams, Lieutenant Donald Stohl, Lieutenant C. Livingston, Sergeant J. Brainard, Sergeant D. Crane, Sergeant Todd Ibbs, Sergeant B. Castelle, Correctional Officer (C/O) B. Winters, C/O P. Lara, C/O K. Rening, C/O J. Espino, C/O J. Cortez, C/O S. Magnia, C/O S. Jimenez, C/O T. Price, C/O Mrs. Velesquez, C/O Mrs. Ayon, C/O Marales, C/O Cruz, M. Voong (Chief, Office of Appeals), M. Hodges (Appeals Examiner), Richard Milam (Supervisor of Building Trades), and John Doe (Director of Corrections, CDCR).

The gravamen of Plaintiff's Complaint is that contaminated water was leaking into his prison cell due to a systemic problem existing since his arrival at SATF in April 2008. Plaintiff's allegations follow:

While housed in cell # 124 in Building 2 at SATF, Plaintiff's cell leaked severely causing mold to grow on the window ceiling. Plaintiff tried more than once to clean the mold off of the window ceiling, but it would grow back in two days. Correctional Officers at SATF observed the water leaks in Plaintiff's cell and more than 25 other cells in Building 2 and reported the information, without result. Plaintiff requested a work order but was told, "It would do no good, we already tried." (First Amd. Comp., ECF No. 12 at 5:19-20.) Plaintiff requested that supervisory officials be summoned.

The next day, while it was raining, an Asian man came and toured the buildings. He observed rainwater leaking into the dayroom with garbage bins placed in the worst areas to capture the water. Plaintiff asked his name and he introduced himself as Tommy Wan, Associate Warden at SATF. Defendant Wan told Plaintiff that they are aware of the water problems but due to budget issues they cannot fix the leaks at this time. Defendant Wan said that they have requested money from the state to make repairs, but nothing was finalized. He observed water entering Plaintiff's cell on the back wall and told Plaintiff to "just be patient." (Id. at 6:11.) Defendant Wan told Plaintiff that the leaking problem had been going on since he (Wan) came

to the prison.  Defendant Wan said some cells have standing water in their light fixtures and other cells have water coming out of their ventilation systems.  Plaintiff informed defendant Wan, "We used our own sheets and towels in an attempt to soak up or stop the water, [and] since these sheets and towels have now been contaminated, how can we immediately receive new ones?"  (Id. at 6:16-19.)  Defendant Wan said he would have to request new ones.  Plaintiff asked Wan, "You mean to tell me that we have to get the contaminated water up with the only sheets and towels we possess, without disinfectant, and we are spreading mold toxin all around the cell and live in it?"  (Id. at 6 ¶ 19.)  Wan replied, "All I am saying is do your best with what you've got.  I'll inform the floor staff to give you some more disinfectant after we leave."  (Id. at 6 ¶ 20.)  Defendant Wan left with two lieutenants, the facility captain, and a sergeant, to observe other leaking cells.  Later that day the floor officers reported to Plaintiff that 2-Block was out of disinfectant, but they had submitted work orders.

Mold grew in Plaintiff's cell and after he washed it the mold came right back in different places.  Plaintiff reported the mold infestation to the floor officers who told Plaintiff and his cellmate to depart the cell so they could go inside to see the damage.  Once inside the cell one officer stated, "It does smell like mold in here.  Have you guys been cleaning up in here?"  (Id. at 7 ¶ 23.)  Plaintiff stated, "Yes, but the mold keeps growing back.  We have been living with this mold infestation for a week or so now."  (Id.)  Officers gave Plaintiff and his cellmate disinfectant and a water hose and they cleaned the cell.  Two weeks later the mold came back, and they had inadvertently infected other cells with mold due to the wash water seeping into other cells.  Plaintiff was left in the same cell for approximately 92 additional days after complaining.

In July or August 2008, Plaintiff was moved to a different cell #216.  The new cell also leaked contaminated rainwater.  It rained approximately 30 times from July 2008-2011, and mold grew in the new cell.   Plaintiff was left to eat, sleep, and live in a cell that was known to have harmful mold, the toxic black kind.

Plaintiff made several attempts verbally between 2008 and 2011 to defendant Wan as well as to 3 Building floor staff for action to be taken.  It was alleged that work orders had been

4

submitted to fix 3 Building roof, but the repairs were never done.  Defendant C/O Ibbs, who was one of the 3 Building floor staff, told Plaintiff that "work orders to fix the leaking roof have been backlogged for over 10 years now."  (Id. at ¶ 31.)  Plaintiff alleges that Defendants violated their own regulations which require that a staff member or inmate shall not use or handle harmful physical agents and toxic or hazardous substances until trained in the safe handling of emergency procedures.

On March 26, 2018, Plaintiff filed an administrative appeal on form 602 requesting repair of the roof and removal of the toxic mold because it was triggering Plaintiff's allergy attacks. The appeal alerted officials that from March 5, 2018 to March 22, 2018, massive amounts of contaminated rainwater leaked from all four walls inside Plaintiff's cell.  Plaintiff repeatedly informed all of the Defendants verbally, through three CDCR 22 forms, and through the 602 appeal, that he suffered from asthma and allergy attacks from the unhealthy black mold environment.  The appeal was partially granted on April 12, 2018 and May 9, 2018 by defendants Brainard and Hacker; on May 26, 2018 and June 8, 2018, defendants Crane, Sherman and Cisneros provided the second level response; and on October 24, 2018, defendants Voong, Hodges, and John Doe (CDCR Director) provided the third level response, denying Plaintiff's appeal.  Defendants' only solution was to rehouse Plaintiff into another cell known to leak and contain mold.

Plaintiff developed asthma and allergies in 2012 while being repeatedly rehoused and exposed to further cell leaks and toxic black mold.  Plaintiff wanted the toxic mold to be removed by trained professionals because it was triggering his asthma and allergy attacks.

Plaintiff alleges that defendants Sherman, Wan, Hacker, Ibbs, Brainard, Crane, Rening, Cisneros, Bastelle, Jimenez, Velasquez, Price, Cruz, Montgomery, Williams, Stohl, Livingston, Lara, Winters, Marales, Chapman, Milam, Barrios, Ayon, Espino, and Cortez knew, or should have known, that Plaintiff suffered from asthma and allergies when kept in unconstitutional conditions of confinement between 2012 and 2018.

Plaintiff contends that because he raised concerns third watch staff observed and reported the contaminated rain water and mold in his cell to the third watch Lieutenant (unknown).  The

Lieutenant came to Plaintiff's cell #224 and observed standing water in the light fixture, on the floor, and pouring down from all four walls.  Plaintiff complained that the conditions he was forced to live in are particularly hazardous for him because he has developed asthma and allergies and is vision impaired.  The Lieutenant told Plaintiff, "It's a systemic problem throughout this prison.  The only thing I can do is move you."  (Id. at 16:10-11.)  Plaintiff agreed to be moved and was assigned to cell #101 in December 2014.  Cell #101 leaked even worse than his other cells.

Plaintiff informed defendants Mrs. Velasquez and Mrs. Ayon of the problem.  Both of these defendants looked in the cell and observed massive amounts of brown rain water coming down the back cell wall.  Mrs. Velasquez stated, "The whole prison has this problem."  (Id. at 16:23-24.)  Plaintiff stated that he wants to live in a cell that doesn't leak, and that was the purpose of him moving.  Mrs. Ayon stated, "You have received your move, if you refuse this housing assignment, we have no other choice but to write you up for refusing a housing.  Your choice!  That's the Lieutenant's order."  (Id. at 16:26-17:1.)  Plaintiff did not want to be disciplined for refusing.  He asked the two defendants for gloves, towels, and disinfectant to clean up the rain water, but they said "no," pursuant to policy they only pass out supplies once  a month.  Both defendants walked away laughing.  Plaintiff was left in worsening conditions with an extremely low temperature inside his cell and massive amounts of contaminated rain water.

While in C-block, Plaintiff received two more cell moves, to cells #128 and #225.  Both cells had the same leaking water conditions.  C/O Marales and C/O S. Magnia were the building officers there and were summoned or stopped at Plaintiff's cell #225 and later #117, numerous times and observed contaminated brown rain water coming from upper wall areas and observed blankets and towels placed on the floor in an attempt to stop or soak up the water.  Plaintiff used personal soap and toilet paper to try and stop the leaks.  When Plaintiff asked to be moved again defendant Magnia said, "Man, this whole building is like this.  If you want to move, I suggest you move out of this prison.  Because they're not fixing the problem, every other cell leaks in this building."  (Id. at 19:19-21.)  When Plaintiff asked for supplies to remove the black mold, both defendants denied his request stating, "Due to policies, we pass out supplies only once a

month." (Id. at 19:27-28.)  In 2016, during the rainy season, it rained inside Plaintiff's cell on Jan. 18, Jan. 19, Jan. 22, Jan. 23, Jan. 26, Jan. 31, Feb. 17, Mar. 6, Mar. 10, Apr. 8, Apr. 24, May 5, and May 6.

Pursuant to state regulations and due to his department being responsible for the custody and treatment policy, defendant Stu Sherman was required to review and approve all operational plans and procedures within the institution as the institution's head. On numerous occasions, Sherman, who was the Warden of SATF, and his subordinates visited C-yard.  Defendant Sherman observed rain water running from numerous cells onto the day-room floor and standing water in numerous light fixtures, leaving some cells dark.  He observed rain water dripping on sleeping areas inside cells and soaking wet beds. Plaintiff contends that defendant Sherman knew that work orders at his institution have been backlogged for years to fix the leaks, prior to when Plaintiff was transferred to SATF in 2008.  Defendant Sherman and his subordinates argue that the water entering Plaintiff's cells is not a problem and repairs will not be done due to staffing and budget issues.  Plaintiff has submitted many written notices to Sherman and other defendants about the leaking cells.  At no time has defendant Sherman exercised his supervisory responsibility to prevent the unconstitutional conditions of confinement.  Plaintiff was threatened by correctional officers that he would be subject to disciplinary action if he refused a housing assignment, even with unconstitutional conditions of confinement, pursuant to policy.

After seven months, Plaintiff was moved to 8 Building, Cell #201.  While there, Plaintiff reported severe and persistent leaking directly to defendants Rening, Lara, and Winters who were employed as Facility C, Building 8 officers.  Those three defendants observed the rain water containing bird feces and bat guano that leaked inside Plaintiff's cell and ran underneath Plaintiff's cell door into the day-room. The three defendants placed large waste bins to collect rain water in three day-rooms during the rainy season to prevent staff from slipping during count time.  The leaks were not only an inconvenience, but had adversely affected Plaintiff's mental and physical health.  Plaintiff suffers physical injuries including asthma development, asthma exacerbation, respiratory infections, cough, wheezing, hypersensitivity, allergies, and breathing ///

problems.  Plaintiff also suffers pain and suffering, shame, humiliation, degradation, emotional distress, embarrassment, and mental distress.

On January 9, 2018, Plaintiff slipped and fell onto the cell's cement floor, and the fall resulted in loss of consciousness and a head injury.  An EMT came and took Plaintiff away by ambulance.  Later that day Warden Sherman visited Plaintiff's cell and saw a stream of rain water coming out of the cell door into the day room.  Plaintiff contends that defendant Sherman approved Plaintiff's continued housing in the same cell.

Plaintiff contends that defendant Richard Milam was employed, or was a contractor with the state at the time the violations of rights occurred.   Although defendant Milam was aware of the physical plant problems for years, no progress was made in permanently repairing the roof. Staff in each building reported that they repeatedly submitted work orders but the problem persists.  Plaintiff contends that for years he reported the dangerous and unsafe conditions directly to defendant Richard Milam using three CDCR 22 forms and also CDCR 602 forms.  Plaintiff reported that the roof leaks contaminated rain water and created dangers to Plaintiff because "it's causing toxic mold to form."  (Id. at 31:19.)  Defendant Milam stated, "CSATF has multiple roof leaks throughout the institution.  Due to staffing and budget issues, Plant Operations cannot keep up with the work orders submitted for leaking roofs."  (Id. at 31:24-27.)  Plaintiff contends that defendant Milam's failure to comply with the numerous work orders submitted by Plaintiff and others, failure to examine the severity of the leaks inside Plaintiff's cells, and failure to remove the mold therein violated the Eighth Amendment by deliberate indifference to Plaintiff's health and safety.  Plaintiff alleges that defendant Milam and Facilities Management knew about the Physical Plant deficiencies and delayed taking action because of the lack of sufficient funds, violating Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment.

At no time did the supervisory defendants Sherman, Wan, Hacker, Williams, Ibbs, Stohl, Crane, Livingston, Brainard, Cisneros, Hodges, Voong, Milam, Castelle, or John Doe (Director of CDCR) exercise their responsibility to prevent the risk of harm to Plaintiff.  Plaintiff contends that he should not have been subjected to violation of his rights to adequate shelter, sanitation,

and personal safety, despite Defendants citing their actions were "due to staffing and budget issues." (Id. at 13 ¶ 50.)

As relief, Plaintiff requests a declaratory judgment, injunctive relief, monetary damages including punitive damages, costs of suit, and reasonable attorney's fees.

## IV.  PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles

the standard 'foreseeability' formulation of proximate cause." <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see</u> <u>also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.    <u>Supervisory Liability and Personal Participation</u>

Plaintiff names as defendants Stu Sherman (Warden), T. Cisneros (Chief Deputy Warden), Tommy Wan (Associate Warden), and M. Hacker (Associate Warden), Richard Milam (Supervisor of Building Trades), and John Doe (Director of Corrections, CDCR), who all hold supervisory positions.

A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under [§] 1983." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).   The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal participation or by setting in motion a "series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." <u>Johnson</u>, 588 F.2d at 743-44.   Each Defendant is only liable for his or her own misconduct, and Plaintiff must demonstrate that each Defendant, through his or her own *individual actions*, violated Plaintiff's constitutional rights.  <u>Iqbal</u>, 556 U.S. at 676-77 (emphasis added).

Therefore, to the extent that Plaintiff seeks to impose liability upon any of the defendants in their supervisory capacity, Plaintiff fails to state a claim.

### B.    <u>Prison Appeals Process</u>

Plaintiff names defendants M. Voong (Chief, Office of Appeals), M. Hodges (Appeals Examiner), Stu Sherman (Warden), T. Cisneros (Chief Deputy Warden), M. Hacker (Associate Warden), Sergeant J. Brainard, Sergeant D. Crane, and John Doe (Director of Corrections, CDCR) for their conduct in the review and handling of Plaintiff's 602 inmate appeal.

Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action.  <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993). The argument that anyone who knows about a violation of the Constitution, and fails to cure it,

has violated the Constitution himself is not correct.  "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."  Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley, 997 F.2d at 495; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Therefore, to the extent that Plaintiff alleges that any of the Defendants failed to properly process Plaintiff's appeals, Plaintiff fails to state a cognizable § 1983 claim.

## C.   Conditions of Confinement

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care, and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)

"The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred."  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), cert. denied, 532 U.S. 1065, 121 S.Ct. 2215, 150 L.Ed.2d 209 (2001).  When considering the conditions of confinement, the court should consider the amount

of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978). "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern, 45 F.3d 1310, 1314, as amended, 75 F.3d 448 (9th Cir. 1995).

"Usually, a more offensive condition will be of constitutional significance when it exists for even a short time, while a less offensive condition will be of constitutional significance only when it has existed for a much longer time." Cockcroft v. Kirkland, 548 F.Supp.2d 767, 775 (N.D. Cal. 2008) The more basic the need, the shorter the time it can be withheld. See Johnson, 217 F.3d 726, 731 (9th Cir. 2000). Substantial deprivations of shelter, food, drinking water, or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. See id. at 732–733; Anderson, 45 F.3d at 1314.

Long-term unsanitary conditions violate the Eighth Amendment, as do non-working toilets. See, e.g., Hearns v. Terhune, 413 F.3d 1036, 1041–42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted, stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions); Anderson, 45 F.3d at 1314-15, as amended, 75 F.3d 448 (placement of violent and mentally disturbed inmates in safety cell that was dirty and smelly with a pit toilet for short duration (up to one day) did not violate 8th Amendment).

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 834. A plaintiff must allege facts to support that a defendant acted with deliberate indifference. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. Id. at 835. To state a claim of deliberate indifference, a plaintiff must meet a two-part test. First, the alleged constitutional deprivation must be, objectively, "sufficiently serious;" and the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." Id. at 834 (citations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with deliberate indifference to

inmate health or safety.  Id. (citations omitted).  In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837 (emphasis added).  Evidence that budgetary constraints affected a defendant's ability to act may be considered.  Peralta v. Dillard, 744 F.3d 1076, 1084-85 (9th Cir. 2014).

### 1.   **Awareness**

Because the conditions in Plaintiff's cell that he allegedly endured at SATF were "more systematic than localized," there is a basis "for the reasonable inference that [all of the Defendants] knew about those systemic conditions."  Vance, 97 F.3d at 993–94 (quoting White v. Best, 2018 WL 4679588, at * 8 (N.D. Ill. Sept. 28, 2018)).  Because water had been leaking in SATF's prison cells for more than ten years, it can be inferred that all of the prison employees who pass by the prisoners' cells in the course of their work, including correctional officers and wardens, were aware of the water and mold that prisoners were living with.

It is also reasonable to believe that some prison officials knew about Plaintiff's complaints by the written requests and appeals Plaintiff sent them.  A prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.  Vance, 97 F.3d at 993–94 (7th Cir. 1996) ( citing see Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir. 1996)).

### 2.   **Personal Liability and Authority to Act**

To be liable for an Eighth Amendment violation, a prison official must be able "to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."  Santiago v. Rabideau, No. 15 C 1856, 2019 WL 1747361, at *12 (N.D. Ill. Apr. 18, 2019) (citing Vance, 97 F.3d at 993; see also Gentry, 65 F.3d at 561 ("In short, some causal connection or affirmative link between the action complained about and the

///

13

official sued is necessary for § 1983 recovery.").   That is, the officer must be able to take some action.

The test for establishing personal responsibility was set forth in <u>Gentry</u>:

"Of course, [the defendant prison official] cannot be personally liable under a theory of *respondeat superior*. However, "'[a]n official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.'"   That is, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . ."

<u>Gentry v. Duckworth</u>, 65 F.3d 555, 561 (7th Cir. 1995).   "'An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.'"   <u>Smith v. Rowe</u>, 761 F.2d 360, 369 (7th Cir.1985) (quoting <u>Crowder v. Lash</u>, 687 F.2d 996, 1005 (7th Cir.1982)).

Most of the named Defendants in the Second Amended Complaint were Correctional Officers, Sergeants, Captains, and Lieutenants at the time of Plaintiff's allegations.   Nothing in Plaintiff's allegations suggests that these Defendants had the authority to remedy the conditions at SATF.   Even the Deputy Wardens and Associate Wardens have not been shown to have had the authority to change policy, or compel others to take the action needed to resolve the problem. The court finds, however, that under Plaintiff's allegations, defendants Warden Stu Sherman and the Supervisor of Building Trades, Richard Milam, are the two Defendants with apparent authority to have affected a remedy.

### 3.   **Deliberate Indifference**

Courts have held that a jury should determine whether individuals in positions like that occupied by Warden Sherman and Supervisor Milam in this case took reasonable steps to address the adverse conditions at SATF sufficient to insulate them from liability.   <u>Santiago</u>, 2019 WL 1747361, at *12 (citing <u>see</u> <u>e.g.</u>, <u>Gray v. Hardy</u>, 826 F.3d 1000, 1009 (7th Cir. 2016) ("Knowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference."); <u>Bentz v. Hardy</u>, 638 Fed. Appx. 535, 538 (7th

Cir. 2016) (finding that "depending upon that extent, duration and kind of infestation an inmate was made to endure, a trier of fact still may reasonably find an Eighth Amendment violation occurred even without a showing of physical harm") (citation omitted).

Plaintiff alleges that defendant Stu Sherman is responsible for policy and is required to review and approve all operational plans and procedures within the institution.  Plaintiff alleges that defendant Richard Milam, Supervisor of Building Trades at SATF, was aware of the physical plant problems for years and has made no progress in permanently repairing the roof from where the contaminated rain water comes into Plaintiff's cell.

Thus, based on the allegations in the Second Amended Complaint, the court finds that Plaintiff states cognizable claims against Defendants Stu Sherman and Richard Milam, in their individual capacities, for unconstitutional conditions of confinement in violation of the Eighth Amendment.

### D.    State Law Claims

Plaintiff alleges that some of the named Defendants violated state regulations and failed to train subordinate workers.  These are state law claims.  Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983.  Section 1983 does not provide a cause of action for violations of state law.  See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief federal law.  See 28 U.S.C. § 1367.

Plaintiff is also advised that California's Government Claims Act requires exhaustion of state law claims with California's Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. CA Govt Code § 945.4, Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't

of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff has not done so.

Therefore, Plaintiff fails to state any claims for the violation of state law.

**E.      Relief Requested**

Besides monetary damages, Plaintiff requests declaratory relief, injunctive relief, costs of suit, and reasonable attorney's fees.

Plaintiff's request for a declaratory judgment should be denied because it is subsumed by Plaintiff's damages claim.  See Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

With regard to attorney's fees, "[i]n any action or proceeding to enforce a provision of section[] 1983. . . , the court, in its discretion, may allow the prevailing party. . . reasonable attorney's fees. . . ."  42 U.S.C. § 1988(b).  However, Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit.  Plaintiff is representing himself in this action. Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails.  See Friedman v. Arizona, 912 F.2d 328, 333 n.2 (9th Cir. 1990), superseded by statute as stated in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005); Gonzalez v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987); see also Rickley v. Cnty. of Los Angeles, 654 F.3d 950, 954 (9th Cir. 2011) ("The Court accordingly adopted a *per se* rule, categorically precluding an award of attorney's fees under § 1988 to a pro se attorney-plaintiff.")

Plaintiff also requests a court order compelling the California Department of Public Health to conduct an environmental health survey at SATF C-yard and inside the cells where Plaintiff was housed.  Plaintiff is advised that any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

16

"The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  18 U.S.C. § 3626(a)(1)(A).

Here, conducting an environmental health survey at SATF would not remedy the past violation of Plaintiff's constitutional rights, and therefore is not narrowly drawn to correct the alleged past violations.  Also, when a prisoner seeks injunctive relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. <u>Pride v. Correa</u>, 719 F.3d 1130, 1138 (9th Cir. 2013) ("When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim is moot"); <u>Dilley v. Gunn</u>, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (finding prisoner's suit for library access to be moot upon his transfer to another prison).  Once Plaintiff was transferred away from SATF where the alleged violations occurred any claims for injunctive relief regarding conditions at that institution became moot.

Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is not entitled to declaratory relief, injunctive relief, or attorney's fees, and is therefore confined to seeking money damages for the violations of his federal rights.

Finally, Plaintiff is advised that the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The physical injury "need not be significant but must be more than *de minimis*."  <u>Oliver v. Keller</u>, 289 F.3d 623, 627 (9th Cir. 2002) ) (back and leg pain and canker sore *de minimis*); <u>see also</u> <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*).  The physical injury requirement applies

only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630. Therefore, Plaintiff is not entitled to monetary damages in this case for emotional distress unless he also shows a physical injury.

## V.   RECOMMENDATIONS AND CONCLUSION

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the Second Amended Complaint against defendants Stu Sherman and Richard Milam for adverse conditions of confinement in violation of the Eighth Amendment, but no other cognizable claims against any of the named Defendants.

Therefore, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff proceed in this case with his cognizable claims against defendant Stu Sherman and Richard Milam for adverse conditions of confinement in violation of the Eighth Amendment;

2. All other claims and defendants be dismissed from this case based on Plaintiff's failure to state a claim;

3. Plaintiff's claims concerning the prison appeals process, state law claims, and claims for declaratory relief, injunctive relief, and attorney's fees be dismissed based on Plaintiff's failure to state a claim;

4. Defendants T. Cisneros (Chief Deputy Warden), Tommy Wan (Associate Warden), M. Hacker (Associate Warden), Captain B. Chapman, Captain A. Williams, Lieutenant Donald Stohl, Lieutenant C. Livingston, Sergeant J. Brainard, Sergeant D. Crane, Sergeant Todd Ibbs, Sergeant B. Castelle, Correctional Officer (C/O) B. Winters, C/O P. Lara, C/O K. Rening, C/O J. Espino, C/O J. Cortez, C/O S. Magnia, C/O S. Jimenez, C/O T. Price, C/O Mrs. Velesquez, C/O Mrs. Ayon, C/O Marales, C/O Cruz, M. Voong (Chief, Office of Appeals), M. Hodges (Appeals Examiner), and John Doe (Director of Corrections, CDCR) be dismissed from this case based on Plaintiff's failure to state any claims against them; and

///

18

5.      This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after the date of service of these findings and recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 28, 2021**                         **/s/ Gary S. Austin**
                                                                UNITED STATES MAGISTRATE JUDGE

19