UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE RAYFORD, | **1:19-cv-00225-AWI-GSA-PC** |
| Plaintiff, | **AMENDED FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED** |
| v. | **(ECF No. 44.)** |
| SHERMAN, et al., | |
| Defendants. | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.    PROCEDURAL HISTORY

Eugene Rayford ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with Plaintiff's Second Amended Complaint filed on January 11, 2021, against defendants Stu Sherman (Warden, California Substance Abuse Treatment Facility and State Prison) and Richard Milam (Supervisor of Building Trades) ("Defendants") for subjecting Plaintiff to adverse conditions of confinement in violation of the Eighth Amendment.  (ECF No. 24.)

On December 13, 2021, Defendants filed a motion for summary judgment on the grounds that the undisputed facts prove that Plaintiff failed to exhaust his administrative remedies for his allegations prior to 2018, and Defendants were not deliberately indifferent to the conditions in Plaintiff's housing unit or are entitled to qualified immunity. (ECF No. 44.)  On January 24,

2022, Plaintiff filed an opposition to the motion.  (ECF No. 47.)   On January 31, 2022, Defendants filed a reply to the opposition.  (ECF No. 48.)

Defendants' motion for summary judgment was submitted upon the record on January 31, 2022, without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, the court finds that Defendants' motion for summary judgment should be granted.

## II.   PLAINTIFF'S ALLEGATIONS[1]

Plaintiff is presently incarcerated at Corcoran State Prison in Corcoran, California.  At the time of the events at issue, Plaintiff was housed at the California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff's allegations follow.

The gravamen of Plaintiff's Second Amended Complaint is that contaminated water was leaking into his prison cell due to a systemic problem existing since his arrival at SATF in April 2008. Plaintiff's allegations follow:

While housed in cell # 124 in Building 2 at SATF, Plaintiff's cell leaked severely causing mold to grow on the window ceiling. Plaintiff tried more than once to clean the mold off of the window ceiling, but it would grow back in two days.  Correctional Officers at SATF observed the water leaks in Plaintiff's cell and more than 25 other cells in Building 2 and reported the information, without result. Plaintiff requested a work order but was told, "It would do no good, we already tried." (Second Amd. Comp., ECF No. 24 at 5:19-20.)

Plaintiff requested that supervisory officials be summoned. The next day, while it was raining, an Asian man came and toured the buildings. He observed rainwater leaking into the dayroom with garbage bins placed in the worst areas to capture the water. Plaintiff asked his name and he introduced himself as Tommy Wan, Associate Warden at SATF [not a defendant]. Wan told Plaintiff that they are aware of the water problems but due to budget issues they cannot

_____

[1] Plaintiff's Second Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.  The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

fix the leaks at this time. Wan said that they have requested money from the state to make repairs, but nothing was finalized. He observed water entering Plaintiff's cell on the back wall and told Plaintiff to "just be patient." (Id. at 6:11.)  Wan told Plaintiff that the leaking problem had been going on since he (Wan) came to the prison.  Wan said some cells have standing water in their light fixtures and other cells have water coming out of their ventilation systems.

Plaintiff informed Wan, "We used our own sheets and towels in an attempt to soak up or stop the water, [and] since these sheets and towels have now been contaminated, how can we immediately receive new ones?" (Id. at 6:16-19.)  Wan said he would have to request new ones. Plaintiff asked Wan, "You mean to tell me that we have to get the contaminated water up with the only sheets and towels we possess, without disinfectant, and we are spreading mold toxin all around the cell and live in it?" (Id. at 6 ¶ 19.) Wan replied, "All I am saying is do your best with what you've got. I'll inform the floor staff to give you some more disinfectant after we leave." (Id. at 6 ¶ 20.) Wan left with two lieutenants, the facility captain, and a sergeant, to observe other leaking cells.

Later that day the floor officers reported to Plaintiff that 2-Block was out of disinfectant, but they had submitted work orders. Mold grew in Plaintiff's cell and after he washed it the mold came right back in different places. Plaintiff reported the mold infestation to the floor officers who told Plaintiff and his cellmate to depart the cell so they could go inside to see the damage. Once inside the cell one officer stated, "It does smell like mold in here. Have you guys been cleaning up in here?" (Id. at 7 ¶ 23.) Plaintiff stated, "Yes, but the mold keeps growing back. We have been living with this mold infestation for a week or so now." (Id.) Officers gave Plaintiff and his cellmate disinfectant and a water hose and they cleaned the cell. Two weeks later the mold came back, and they had inadvertently infected other cells with mold due to the wash water seeping  into other cells.

Plaintiff was left in the same cell for approximately 92 additional days after complaining. In July or August 2008, Plaintiff was moved to a different cell #216. The new cell also leaked contaminated rainwater. It rained approximately 30 times from July 2008-2011, and mold grew in the new cell. Plaintiff was left to eat, sleep, and live in a cell that was known to have harmful

mold, the toxic black kind. Plaintiff made several attempts verbally between 2008 and 2011 to Wan as well as to 3 Building floor staff for action to be taken.

It was alleged that work orders had been submitted to fix 3 Building roof, but the repairs were never done. Correctional Officer Ibbs [not a defendant], who was one of the 3 Building floor staff, told Plaintiff that "work orders to fix the leaking roof have been backlogged for over 10 years now." (Id. at ¶ 32.) Plaintiff alleges that Defendants violated their own regulations which require that a staff member or inmate shall not use or handle harmful physical agents and toxic or hazardous substances until trained in the safe handling of emergency procedures.

On March 26, 2018, Plaintiff filed an administrative appeal on form 602 requesting repair of the roof and removal of the toxic mold because it was triggering Plaintiff's allergy attacks. The appeal alerted officials that from March 5, 2018 to March 22, 2018, massive amounts of contaminated rainwater leaked from all four walls inside Plaintiff's cell. Plaintiff repeatedly informed all of the Defendants verbally, through three CDCR 22 forms, and through the 602 appeal, that he suffered from asthma and allergy attacks from the unhealthy black mold environment. The appeal was partially granted on April 12, 2018 and May 9, 2018 by Brainard and Hacker [not defendants]; on May 26, 2018 and June 8, 2018, Crane [not a defendant], Sherman and Cisneros [not a defendant] provided the second level response; and on October 24, 2018, Voong, Hodges, and John Doe (CDCR Director) [not defendants] provided the third level response, denying Plaintiff's appeal. Their only solution was to rehouse Plaintiff into another cell known to leak and contain mold.

Plaintiff developed asthma and allergies in 2012 while being repeatedly rehoused and exposed to further cell leaks and toxic black mold. Plaintiff wanted the toxic mold to be removed by trained professionals because it was triggering his asthma and allergy attacks. Plaintiff alleges that defendant Sherman and non-defendants Wan, Hacker, Ibbs, Brainard, Crane, Rening, Cisneros, Bastelle, Jimenez, Velasquez, Price, Cruz, Montgomery, Williams, Stohl, Livingston, Lara, Winters, Marales, Chapman, Milam, Barrios, Ayon, Espino, and Cortez knew, or should have known, that Plaintiff suffered from asthma and allergies when kept in unconstitutional conditions of confinement between 2012 and 2018. Plaintiff contends that because he raised

concerns third watch staff observed and reported the contaminated rain water and mold in his cell to the third watch Lieutenant (unknown).

The Lieutenant came to Plaintiff's cell #224 and observed standing water in the light fixture, on the floor, and pouring down from all four walls. Plaintiff complained that the conditions he was forced to live in are particularly hazardous for him because he has developed asthma and allergies and is vision impaired. The Lieutenant told Plaintiff, "It's a systemic problem throughout this prison. The only thing I can do is move you." (Id. at 16:10-11.)

Plaintiff agreed to be moved and was assigned to cell #101 in December 2014. Cell #101 leaked even worse than his other cells. Plaintiff informed Mrs. Velasquez and Mrs. Ayon [not defendants] of the problem. Both of them looked in the cell and observed massive amounts of brown rain water coming down the back cell wall. Mrs. Velasquez stated, "The whole prison has this problem." (Id. at 16:23-24.) Plaintiff stated that he wants to live in a cell that doesn't leak, and that was the purpose of him moving. Mrs. Ayon stated, "You have received your move, if you refuse this housing assignment, we have no other choice but to write you up for refusing a housing. Your choice! That's the Lieutenant's order." (Id. at 16:26-17:1.) Plaintiff did not want to be disciplined for refusing. He asked Ayon and Velasquez for gloves, towels, and disinfectant to clean up the rain water, but they said "no," pursuant to policy they only pass out supplies once a month. Both of them walked away laughing.

Plaintiff was left in worsening conditions with an extremely low temperature inside his cell and massive amounts of contaminated rain water. While in C-block, Plaintiff received two more cell moves, to cells #128 and #225. Both cells had the same leaking water conditions. C/O Marales and C/O S. Magnia [not defendants] were the building officers there and were summoned or stopped at Plaintiff's cell #225 and later #117, numerous times and observed contaminated brown rain water coming from upper wall areas and observed blankets and towels placed on the floor in an attempt to stop or soak up the water. Plaintiff used personal soap and toilet paper to try and stop the leaks. When Plaintiff asked to be moved again Magnia said, "Man, this whole building is like this. If you want to move, I suggest you move out of this prison. Because they're not fixing the problem, every other cell leaks in this building." (Id. at 19:19-21.)

When Plaintiff asked for supplies to remove the black mold, both of them denied his request stating, "Due to policies, we pass out supplies only once a month." (Id. at 19:27-28.)

In 2016, during the rainy season, it rained inside Plaintiff's cell on Jan. 18, Jan. 19, Jan. 22, Jan. 23, Jan. 26, Jan. 31, Feb. 17, Mar. 6, Mar. 10, Apr. 8, Apr. 24, May 5, and May 6. Pursuant to state regulations and due to his department being responsible for the custody and treatment policy, defendant Stu Sherman was required to review and approve all operational plans and procedures within the institution as the institution's head. On numerous occasions, Sherman, who was the Warden of SATF, and his subordinates visited C-yard. Defendant Sherman observed rain water running from numerous cells onto the day-room floor and standing water in numerous light fixtures, leaving some cells dark. He observed rain water dripping on sleeping areas inside cells and soaking wet beds. Plaintiff contends that defendant Sherman knew that work orders at his institution have been backlogged for years to fix the leaks, prior to when Plaintiff was transferred to SATF in 2008.

Defendant Sherman and his subordinates argue that the water entering Plaintiff's cells is not a problem and repairs will not be done due to staffing and budget issues. Plaintiff has submitted many written notices to Sherman about the leaking cells. At no time has defendant Sherman exercised his supervisory responsibility to prevent the unconstitutional conditions of confinement. Plaintiff was threatened by correctional officers that he would be subject to disciplinary action if he refused a housing assignment, even with unconstitutional conditions of confinement, pursuant to policy.

After seven months, Plaintiff was moved to 8 Building, Cell #201. While there, Plaintiff reported severe and persistent leaking directly to Rening, Lara, and Winters [not defendants] who were employed as Facility C, Building 8 officers. Those three officers observed the rain water containing bird feces and bat guano that leaked inside Plaintiff's cell and ran underneath Plaintiff's cell door into the day-room. The three officers placed large waste bins to collect rain water in three day-rooms during the rainy season to prevent staff from slipping during count time. The leaks were not only an inconvenience, but had adversely affected Plaintiff's mental and physical health. Plaintiff suffers physical injuries including asthma development, asthma

exacerbation, respiratory infections, cough, wheezing, hypersensitivity, allergies, and breathing problems. Plaintiff also suffers pain and suffering, shame, humiliation, degradation, emotional distress, embarrassment, and mental distress.

On January 9, 2018, Plaintiff slipped and fell onto the cell's cement floor, and the fall resulted in loss of consciousness and a head injury. An EMT came and took Plaintiff away by ambulance. Later that day Warden Sherman visited Plaintiff's cell and saw a stream of rain water coming out of the cell door into the day room. Plaintiff contends that defendant Sherman approved Plaintiff's continued housing in the same cell.

Plaintiff contends that defendant Richard Milam was employed, or was a contractor with the state at the time the violations of rights occurred. Although defendant Milam was aware of the physical plant problems for years, no progress was made in permanently repairing the roof. Staff in each building reported that they repeatedly submitted work orders but the problem persists. Plaintiff contends that for years he reported the dangerous and unsafe conditions directly to defendant Richard Milam using three CDCR 22 forms and also CDCR 602 forms.

Plaintiff reported that the roof leaks contaminated rain water and created dangers to Plaintiff because "it's causing toxic mold to form." (Id. at 31:19.) Defendant Milam stated, "CSATF has multiple roof leaks throughout the institution. Due to staffing and budget issues, Plant Operations cannot keep up with the work orders submitted for leaking roofs." (Id. at 31:24-27.) Plaintiff contends that defendant Milam's failure to comply with the numerous work orders submitted by Plaintiff and others, failure to examine the severity of the leaks inside Plaintiff's cells, and failure to remove the mold therein violated the Eighth Amendment by deliberate indifference to Plaintiff's health and safety. Plaintiff alleges that defendant Milam and Facilities Management knew about the Physical Plant deficiencies and delayed taking action because of the lack of sufficient funds, violating Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment.

At no time did the supervisory individuals Sherman, Wan, Hacker, Williams, Ibbs, Stohl, Crane, Livingston, Brainard, Cisneros, Hodges, Voong, Milam, Castelle, or John Doe (Director of CDCR) exercise their responsibility to prevent the risk of harm to Plaintiff. Plaintiff contends

that he should not have been subjected to violation of his rights to adequate shelter, sanitation, and personal safety, despite Defendants citing their actions were "due to staffing and budget issues." (Id. at 13 ¶ 50.)

As relief, Plaintiff requests a declaratory judgment, injunctive relief, monetary damages including punitive damages, costs of suit, and reasonable attorney's fees.

## III.    SUMMARY JUDGMENT BASED ON EXHAUSTION

### A.    <u>Legal Standards</u>

#### 1.    <u>Statutory Exhaustion Requirement</u>

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  <u>Jones v. Bock</u>, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, <u>Booth v. Churner</u>, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison grievance process itself."  <u>Bock</u>, 549 U.S. at 218 (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)).  <u>See</u> <u>also</u> <u>Marella v. Terhune</u>, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'").  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. <u>Woodford</u>, 548 U.S. at 90.  However, the Ninth Circuit has made clear:  A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm

///

being grieved. <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. <u>Id.</u>

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 824 (9th Cir. 2010) (citing <u>Bock</u>, 549 U.S. at 218). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. <u>Id</u>; <u>Griffin</u>, 557 F.3d at 1120; <u>see also</u> <u>Bock</u>, 549 U.S. at 219 (citing <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation."). Thus, in this case, the grievance process used at Corcoran State Prison where Plaintiff was incarcerated defines the boundaries of proper exhaustion.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. <u>See</u> <u>Albino v. Baca (Albino II)</u>, 747 F.3d 1172-73 (9th Cir. 2014). When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable." <u>Sapp</u>, 623 F.3d at 823; <u>see also</u> <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); <u>Ward v. Chavez</u>, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); <u>Brown v. Valoff</u>, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available); <u>Marella</u>, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance). In such a case, "the inmate cannot pursue the necessary sequence of appeals." <u>Sapp</u>, 623 F.3d at 823.

///

///

### 2.   California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2018).  The process is initiated by submitting a CDCR Form 602.  Id. at § 3084.2(a) (2018).

On January 28, 2011, California prison regulations governing inmate grievances were revised.  Cal.Code Regs. tit. 15, § 3084.7 (2018).  Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal.Code Regs. tit. 15, § 3084.7 (2018). Under specific circumstances, the first level review may be bypassed.  Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3) (2018). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal.Code Regs. tit. 15, § 3084.2(a)(3) (2018).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal.Code Regs. tit. 15, § 3084.2(a)(4) (2018). An inmate now has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal.Code Regs. tit. 15, § 3084.8(b) (2018).

At the time of the events giving rise to the present action in 2018, California prisoners were required to submit appeals within thirty calendar days of the event being appealed. Cal.Code Regs. tit. 15, § 3084.8(b) (2018).  The process was initiated by submission of the appeal to the first formal level.  Id. at § 3084.7(a) (2018).   Three levels of appeal were involved, including the first formal level, second formal level, and third formal level.  Id. at § 3084.7 (2018).  A final decision at the third level[2] of review satisfied the exhaustion requirement under 42 U.S.C. § 1997e(a).  Id. at § 3084.7(d)(3) (2018); see Lira v. Herrera, 427 F.3d 1164, 1166 (9th Cir. 2005).

In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.   A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler, 397 F.3d at 1183; Bennett, 293 F.3d at 1098.

### 3.    Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion.  Bock, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  On April 3, 2014, the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a).   Albino II, 747 F.3d at 1168–69. Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[3] or (2) a motion for summary judgment under Rule 56.  Id.  If the court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e).  Bock, 549 U.S. at 223–24; Lira, 427 F.3d at 1175–76.

///

---

[2] The third level is sometimes known as the Director's level.

[3] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint."  Albino II, 747 F.3d at 1162.

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.")  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  In judging the evidence at the summary judgment stage, the court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).  The court must liberally construe Plaintiff's filings because he is a *pro se* prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id.  The ultimate burden of proof remains with defendants, however. Id.  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or

objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**B.    Parties' Undisputed Facts Re Administrative Remedies** [4]

The Court shall address Defendants' motion based on Plaintiff's failure to exhaust administrative remedies.   In accordance with Local Rule 260(a), on December 13, 2021, Defendants Sherman and Milam submitted the following Statement of Undisputed Facts with references to the supporting evidence.  (ECF No. 44-3.)  On January 31, 2022, Plaintiff submitted the following Responses to Defendants' Statement of Undisputed Material Facts.  (ECF No. 48.) Unless otherwise noted, the following facts are undisputed by the parties or as determined by the court based on a thorough review of the record.

| DEFENDANTS' UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| **ADMINISTRATIVE REMEDIES** | |
| 1. Plaintiff Eugene Rayford (J-30267) is a California prisoner who filed this lawsuit on February 7, 2019, alleging deliberate indifference with respect to alleged in-cell leaks in Facility C dating back to 2008. (ECF Nos. 1, 24.) | Dispute facts.  Deny.[5] |

---

[4]  These facts are taken from Defendants' Separate Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment.  (ECF No. 44-3 at 1-6).  On January 24, 2022, Plaintiff submitted a response to Defendants' Statement of Undisputed Facts, (ECF No. 47 at 55-60 (Exh. G)), and a Statement of Disputed Facts, (ECF No. 47 at 40-51 (Exh. F))).   On January 31, 2022, Defendants submitted a reply to Plaintiff's Statement of Disputed Facts and a reply to Plaintiff's response to Defendants' Statement of Undisputed Facts.  (ECF No. 48.)  The court has considered all declarations and exhibits submitted in support of each statement.  Unless otherwise indicated, disputed, duplicative, and immaterial facts are omitted from this statement and relevant objections are overruled.

[5] Plaintiff has not indicated which part of Fact #1 he disputes, nor has he cited evidence supporting his version of the facts.  Therefore, Fact #1 remains Undisputed.

| DEFENDANTS' UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| 2. Plaintiff submitted four grievances regarding in-cell leaks at the California Substance Abuse Treatment Facility & State Prison, Corcoran (SATF): SATF-C-18-00386, SATF-C-18-00605/SATF-C18-01604, SATF-C-18-01800, and SATFC-18-06834. (Decl. Shaw ¶ 5, Ex. A-G.) | Admitted. |
| 3. Plaintiff submitted SATF-C-18-00386 on January 8, 2018, regarding alleged in-cell leaks dating back to 2012. (Decl. Shaw, Ex. B) | Disputed.[6] |
| 4. SATF-C-18-00386 was canceled for failure to comply with time constraints and Plaintiff was informed that if he wanted to appeal his current housing he could file a separate appeal. (Decl. Shaw, Ex. B) | Admitted. |
| 5. The cancelation of SATF-C-18-00386 informed Plaintiff that he could not resubmit a rejected appeal and, instead, must appeal the cancelation. (Decl. Shaw, Ex. B) | Admitted. |
| 6. There is no record of Plaintiff appealing the cancelation of SATF-C-18-00386. (Decl. Shaw ¶ 6, Ex. A) | Admitted. |

[6] Plaintiff has not indicated which part of Fact #3 he disputes, nor has he cited evidence supporting his version of the facts.  Therefore, Fact #3 remains Undisputed.

| DEFENDANTS' UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| 7. Plaintiff submitted SATF-C-18-00605 on January 22, 2018, regarding alleged in cell leaks from May 2017, to January 2018. Plaintiff also complained that even though staff were moving him out of leaking cells, the cells he was moved into also leaked. Plaintiff further alleged a slip-and-fall on January 9, 2018, because of an in-cell leak. (Decl. Shaw, Ex. C.) | Admitted. |
| 8. SATF-C-18-00605 was rejected because it combined multiple issues and Plaintiff was instructed to submit the various issues as separate appeals. (Decl. Shaw, Ex. C.) | Admitted. |
| 9. Plaintiff resubmitted SATF-C-18-00605 and it was canceled because Plaintiff had disregarded appeal staffs' instructions regarding the rejected appeal. (Decl. Shaw, Ex. C.) | Admitted. |
| 10. The cancelation of SATF-C-18-00605 informed Plaintiff that he could not resubmit a canceled appeal and, instead, must appeal the cancelation. (Decl. Shaw, Ex. C.) | Admitted. |
| 11. Plaintiff then resubmitted SATF-C-18-00605, and the appeals office reiterated that he could not resubmit the canceled appeal and must, instead, appeal the cancelation. (Decl. Shaw, Ex. C.) | Admitted. |

| DEFENDANTS' UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| 12. Plaintiff submitted SATF-C-18-01604 on Mach 16, 2018, to appeal the cancelation of SATF-C-18-00605. (Decl. Shaw, Ex. C.) | Admitted. |
| 13. The intuitional and third level reviews denied SATF-C-18-01604. (Decl. Shaw, Ex. C; Decl. Mosley, Ex. B.) | Admitted. |
| 14. Plaintiff submitted SATF-C-18-01800 on March 26, 2018, complaining about in cell leaks occurring in March 2018. (Decl. Shaw, Ex. D.) | Admitted. |
| 15. The first level response to SATF-C-18-01800 recounts that a work order was submitted for repairs and Plaintiff was offered the opportunity to rehouse but refused. (Decl. Shaw, Ex. D.) | Disputed facts.  B. Action request to SATF-C-18-1800. Defendants did not remove or clean the toxic black mold [illegible] nor removed the bird/bat feces off the roof. Respondent does not appear to contest this. Deny.[7] |

---

[7] In Plaintiff's response to Fact #15, Plaintiff has not disputed any part of Fact #15 as submitted by Defendants.  Therefore, Fact # 15 remains Undisputed.

| DEFENDANTS' UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| 16. The response to SATF-C-18-01800 also explained that "there are multiple roof leaks throughout the institution. Due to staffing and budget issues Plant Operations cannot keep up with the work orders submitted for roof leaks. Most of these repairs are time consuming due to the severe damage; the work orders are prioritized by the severity of leaks." (Decl. Shaw, Ex. D.) | Disputed facts.  The response to SATF-C-19-01800 confirmed the unsanitary and unsafe conditions.  But nothing had been done to remedy the hazardous eating environment or repair the leaks.  Other then give/approve overtime to fitten [sic] the pockets of the defendant R. Milam. (Decl. Rayford) Plaintiff Deny.[8] |
| 17. Plaintiff was dissatisfied with the first level response to SATF-C-18-01800 and appealed to the second level, which was addressed by Defendant Sherman. (Decl. Shaw, Ex. D.) | Admitted.  Plaintiff request action for relief to SATF-C- 18-01800 was not granted at the first or second level of review. (Decl. Ex. E & A) Disputed facts or Plaintiff deny.[9] |

---

[8] In Plaintiff's response to Fact #16, Plaintiff has not disputed any part of Fact #16 as submitted by Defendants.  Therefore, Fact # 16 remains Undisputed.

[9] Plaintiff has admitted Fact #17.  In Plaintiff's response to Fact #17, Plaintiff has not disputed any part of Fact #17 as submitted by Defendants.  Therefore, Fact #17 remains Undisputed.

.

| DEFENDANTS' UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| 18. In response to SATF-C-18-01800, Defendant Sherman noted that a work order was submitted for repairs to Plaintiff's cell, that Plaintiff was provided cleaning supplies, and that on May 3, 2018, Plaintiff was rehoused. (Decl. Shaw, Ex. D.) | Disputed facts: Defendant was placed on notice of the fact that mold developed in his cell from the massive amounts of leaks. (Ex. A) which made unsanitary and unsafe conditions. Defendant Sherman was aware of the danger to plaintiffs [sic] health. The conditions made my asthma and allergies worsen. – Plaintiff deny.[10] |
| 19. Plaintiff was dissatisfied with the second level response to SATF-C-18-01800 and appealed to the third level. (Decl. Mosley, Ex. C.) | Admitted.   But disputed facts. Defendant Sherman was consistently unwilling to provide any relief. (2) The request action for relief to SATF-C-18-1800 was not granted. (Decl. Ex. E and A) Plaintiff deny.[11] |
| 20. The third level response to SATF-C-18-01800 found that no violation of any laws, policies, or procedures, with respect to his complaint of in-cell leaks in March 2018 because a work order was submitted for repairs and Plaintiff was rehoused. (Decl. Mosley, Ex. C.) | Admitted: But disputed facts. The third level response improperly denied Plaintiff. They were consistently unwilling to provide any relief. (2) The request action for relief to SATF-C-18- 01800 was not granted at the first or second level of review. (Decl. Ex. E, A) Disputed facts Plaintiff deny.[12] |

[10] Plaintiff does not dispute any part of Defendants' description in Fact #18 of Defendant Sherman's response to SATF-C-18-1800.  Therefore, Fact #18 remains Undisputed.

[11] Plaintiff has admitted Fact #19.  In Plaintiff's response to Fact #19, Plaintiff has not disputed any part of Fact #19 as submitted by Defendants.  Therefore, Fact # 19 remains Undisputed.

[12] Plaintiff has admitted Fact #20.  In Plaintiff's response to Fact #20, Plaintiff has not disputed any part of Fact #20 as submitted by Defendants.  Therefore, Fact #20 remains Undisputed.

| DEFENDANTS' UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| 21. The third level response to SATF-C-18-01800 also noted that Plaintiff had attempted to add new issues and requests to the appeal and that those would not be addressed because it was inappropriate to expand an appeal beyond what was submitted in the initial appeal. (Decl. Mosley, Ex. C.) | Disputed facts: C.C.R., which (Ex A, B) requires that Plaintiff "describe the problem and the action requested" As such, Plaintiff did provide the requisite level of details in his appeal and the Third level of appeal exhausted my administrative remedies with respect to the defendants dates, time, and damages requested. Deny.[13] |
| 22. Plaintiff submitted SATF-C-18-06835 on December 2, 2018, complaining about additional in-cell leaks in November and December of 2018. (Decl. Shaw, Ex. E.) | Disputed facts.  Plaintiff deny.[14] |
| 23. The first level response to SATF-C-18-06835 was completed on December 26, 2018, and notes that Plaintiff was transferred to California State Prison, Sacramento. (Decl. Shaw, Ex. E.) | Disputed facts.  Plaintiff deny.[15] |

---

[13] Plaintiff does not dispute any part of Defendants' description in Fact #21 of the Third Level response to SATF-C-18-1800.  Therefore, Fact #21 remains Undisputed.

[14] Plaintiff has not indicated which part of Fact #22 he disputes, nor has he cited evidence supporting his version of the facts.  Therefore, Fact #22 remains Undisputed.

[15] Plaintiff has not indicated which part of Fact #23 he disputes, nor has he cited evidence supporting his version of the facts.  Therefore, Fact #23 remains Undisputed.

| DEFENDANTS' UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| 24. Plaintiff was informed in the response to SATF-C-18-06835 that a work order was submitted to repair his cell and that SATF had received funding for roof repairs, although the official start date for repairs had not been set. (Decl. Shaw, Ex. E.) | Disputed facts.  Plaintiff deny.[16] |
| 25. Plaintiff was dissatisfied with the first level response to SATF-C-18-06835 and appealed to the second level, where Defendant Sherman denied the appeal. (Decl. Shaw, Ex. E.) | Disputed facts.  Plaintiff deny.[17] |
| 26. Plaintiff then appealed SATF-C-18-06835 to the third level on March 28, 2019 (after he filed this lawsuit), where the appeal was canceled as duplicative of SATF-C18-01800. (Decl. Mosley, Ex. D; ECF No. 1.) | Disputed facts: with respect to rehousing and their own grieving system see C.C.R., tit. 15, section 3084.1 (Deny.) I can appeal "any" decision, action, condition and policy that adverse effect upon my health.[18] |

---

[16] Plaintiff has not indicated which part of Fact #24 he disputes, nor has he cited evidence supporting his version of the facts.  Therefore, Fact #24 remains Undisputed.

[17] Plaintiff has not indicated which part of Fact #25 he disputes, nor has he cited evidence supporting his version of the facts.  Therefore, Fact #25 remains Undisputed.

[18] In Plaintiff's response to Fact #26, Plaintiff has not disputed any part of Fact #26 as submitted by Defendants.  Therefore, Fact #26 remains Undisputed.

| DEFENDANTS' UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| 27. The third level response to SATF-C-18-06835 noted that Plaintiff was grieving leaks in a different cell, but Plaintiff was already informed that the prison had obtained funding to repair the roofs in response to this issue. (Decl. Mosley, Ex. D.) | "Disputed facts Plaintiff Deny (Decl. Rayford) (Ex. A, B, C, D)[19] |

### C.   **Defendants' Position**

Plaintiff filed this lawsuit on February 7, 2019, alleging deliberate indifference with respect to alleged in-cell leaks in Facility C at SATF dating back to 2008.  (ECF Nos. 1, 24.) Defendants Milam and Sherman argue that their motion for summary judgment based on exhaustion should be granted for Plaintiff's claims prior to 2018, because Plaintiff failed to exhaust his administrative remedies for those claims before initiating this action.  Defendants contend that Plaintiff submitted four grievances regarding in-cell leaks at SATF: SATF-C-18-386, SATF-C-18-605/SATF-C-18-1604, SATF-C-18-1800, and SATF-C-18-6835. (Decl. Shaw ¶ 5, Ex. A-G.)

Plaintiff submitted appeal no. SATF-C-18-00386 on January 8, 2018, regarding in-cell leaks dating back to 2012, but the appeal was cancelled and there is no record that Plaintiff appealed the cancellation.  (Decl. Shaw, ¶ 6, Exs. A, B)

Plaintiff submitted appeal no. SATF-C-18-605 on January 22, 2018, concerning water leaks from May 2017 to January 2018 and a slip-and-fall on January 9, 2018.  (Decl. Shaw, Ex. C.)  The appeal was rejected twice, and Plaintiff appealed the cancellation in appeal no. SATF-C-18-1604, but Plaintiff's appeal of the cancellation was denied at the Third Level of review.  (Id.)

---

[19] Plaintiff has not indicated which part of Fact #27 he disputes.  Therefore, Fact #27 is Undisputed.

Plaintiff submitted appeal no. SATF-C-18-1800 on March 26, 2018.  (Decl. Shaw, Ex. D.)
The first level recounts that a work order was submitted for repairs and Plaintiff was offered the
opportunity to rehouse but refused. (Id.)  The response also explained that "there are multiple
roof leaks throughout the institution. Due to staffing and budget issues Plant Operations cannot
keep up with the work orders submitted for roof leaks."  (Id.)  Plaintiff exhausted his remedies
to the Third Level of review, but the appeal concerned only in-cell water leaks occurring in March
2018.  (Id.; Decl. Mosley, Ex. C.)

Plaintiff submitted appeal no. SATF-C-18-6835 on December 2, 2018, concerning water
leaks in November and December 2018.  (Decl. Shaw, Ex. E.) The appeal was not exhausted
until after Plaintiff filed this lawsuit, and it was also cancelled as duplicative of appeal no. SATF-
C-18-1800.  (Decl. Mosley, Ex. D; ECF No. 1.)

### D.    Defendants' Burden

The court finds that Defendants have carried their initial burden to prove that there was
an available administrative remedy and that Plaintiff failed to exhaust that remedy for his claims
prior to 2018.  Therefore, the burden shifts to Plaintiff to come forward with evidence showing
that he did exhaust the available remedies for all of his claims against Defendants Sherman and
Milam, or that there is something in his particular case that made the existing and generally
available administrative remedies effectively unavailable to him.

### E.    Plaintiff's Opposition

In opposition to Defendants' motion, Plaintiff argues that he exhausted his administrative
remedies for his claims in this case with Appeal log no. SATF-C-18-01800.   He provides
evidence that Appeal log no. SATF-C-18-01800 was accepted at the First Level of appeal review
granted in part on April 12, 2018, accepted at the Second Level of review and granted in part on
June 8, 2018, and accepted and denied at the Third Level of review on October 26, 2018.  (Exhibit
A to Opposition, ECF No. 47 at 16-25.)

### F.    Discussion

**1.    Plaintiff's Claims**.   In the Court's order issued on March 9, 2021, the
Court found that Plaintiff stated cognizable claims in the Second Amended Complaint against

defendants Stu Sherman and Richard Milam for adverse conditions of confinement in violation of the Eighth Amendment, on Plaintiff's allegations that contaminated water was leaking into his prison cell due to a systemic problem existing since his arrival at SATF in April 2008, but no other claims.  (ECF No. 28.)

### 2.   Plaintiff's Grievances

The alleged adverse conditions at issue in this case existed from the time Plaintiff arrived at SATF in **April 2008**, and Plaintiff's initial Complaint was filed on **February 7, 2019**.  (ECF No. 1; Second Amd. Compl., ECF No. 24 at 1:16-21.)  The parties do not dispute that that Plaintiff submitted four grievances regarding in-cell leaks at the California Substance Abuse Treatment Facility & State Prison, Corcoran (SATF): SATF-C-18-00386, SATF-C-18-00605/SATF-C-18-01604, SATF-C-18-01800, and SATF-C-18-06835. (UF No 2; Decl. Shaw, ECF No. 44-8 ¶ 5, Ex. A-G.)

Plaintiff submitted SATF-C-18-00386 on January 8, 2018, regarding alleged in-cell leaks dating back to 2012. (UF No. 3; Decl. Shaw, Ex. B)

### (1) Grievance No. SATF-C-18-00386, filed on January 8, 2018

Cell leakage with rain water.  Plaintiff is a state prisoner currently incarcerated at California Substance Abuse Treatment Facility in Corcoran, CA.  Defendants are a collection of people who are responsible or work for the California prison system.  Plaintiff alleges that on 4-12-12 thru 1-7-18, he has made countless attempts to receive a civilized standards of decency, he submitted numerous CCDR 22 forms to the CDC plan ops staff Richard Milam, personally spoken to housing staff in 7, 11, 3, 1, 2, and 8 building where I was housed, personally spoken to G. Winters, Lara, K. Rening, Morales, Lt. Donald Stohl, Lt. C. Livington, Sergeant Todd, Cpt. M. Hacker, Cpt. J. Ourique, Warden Stu Sherman, AW Tommy Wan and Cpt. B. Chapman, complaining to them about my cell severely leaking rain water when it rains due to poor prison infrastructure, causing black mold and mildew to build up on the upper wall, cold air temperature, and the destruction of personal property, legal papers, letters, clothing, books, pictures.  Plaintiff alleges due to this black mold and mildew has worsened my asthma attacks and allergies.  Plaintiff alleges that numerous times he has tried to remedy the poor infrastructure with soap and tissue mixed together.  Plaintiff contends that he was subjected to inhumane living conditions by prison officials deliberately straying from the established policy CCR title 15 3380(a), 3380(b) and (c) and the long recognized as interpreted in Supreme Court order the 8th Amendment for denying humane conditions of confinement in violation of the cruel and unusual punishments clause of the 8th Amdt. and 42 U.S.C. § 1983. And violation of Cal. Constitution, article 2 § 17.  Plaintiff alleges the defendants listed herein and above are in direct violation of my 8th and 14th Amendment rights and subjected to corporal punishment under the color of authority in

///

23

violation of my amendment right, p.c. § 5058(a), 5078.3, 5058(3)(a)(2) and 5054, 6253. Also in direct violation, the superintendents, director, chief deputy director.

(Exhibit B, Decl. of A. Shaw, ECF No. 44-8 at 9, 10.)

This appeal was cancelled and there is no record that Plaintiff appealed the cancellation. (UF Nos. 4-6; Decl. Shaw, ¶ 6, Exhs. A, B).  Therefore, Plaintiff did not exhaust his remedies using this appeal.

### (2)  Grievance Nos. SATF-C-18-00605, filed on January 22, 2018, and SATF-C-18-01604

I'm appealing that I slip and fell – that it's a violation of my freedom from cruel and unusual punishment, violation of my 8th Amend.  On the date of 1-9-2018, while cleaning up my cell from the rain water that was profusely leaking gallons of water into my cell from all 4 walls, I slipped and fell down.  Officials deliberately strayed from the established Policy CCR 15 3380(a)(b)&(c) p.c. [illegible].  Into the cell thru cracks in the poor pre-fab walls.  I reported the problem to Donald Stohl verbally on 3d watch 5-17-17, Cruz & T. Price on 5-17-17, Mrs. Velasquez on 5-8-2017, Todd Ibson 6-2-17.  Approximately 7-4-17, I was moved due to those conditions, to C8-126, to the same similar conditions with black mold and mildew build-up.  Upon me entering cell 8-126 I notice rain water on the floor.  I informed floor staff, a month later they move me because I complain, to cell C8-201, on the dates of 11-26-2017, 12-20-17, 1-3-18, 1-4-18, 1-8-18, 1-9-18, 1-17-18, 1-19-18 rain water enter my cell again. Again I informed staff K. Reling, B. Winter, Lara.  The defendants C. Livington, M. Hacker, J. Ourique, Stu Sherman, Tommy Wan, B. Chapman all are well aware of this problem, as is plant-ops.  They are aware due to numerous complaints, appeals, work-orders submitted, staff complaints, memos, etc., yet no corrective measures were taken.  This constitutes a deliberate indifference to my suffering which violates my 8th amend rights guaranteed under the U.S. Constitution that preclude my subjugation to cruel and unusual punishment.  It also violates Cal. Constitution, articles 1 & 17.  Furthermore, on 1-9-18 approximately 10:30am water from the rain was leaking profusely inside of my cell, while clean up all the rain water from the walls and floor.  I suffered from a slip and fall inside my cell from the water hitting the back of my head so hard on the concrete floor knocking myself out unconscious.  I suffered a severe bruised left arm.  The next day with pain & severe pain on the back of my head.  I was taken by ambulance.  In violation of CCR title 15 3430 . . .

(Decl. Moseley, ECF No. 44-4 at 20 (Exh. B)).

This Appeal no. SATF-C-18-00605 was rejected (cancelled) twice, and Plaintiff appealed the cancellation in a new Appeal no. SATF-C-18-01604.  Plaintiff completed the Third Level of review with Appeal no. SATF-C-18-01604, where Plaintiff's request to undo the cancellation was denied at the Third Level of review.  (UF Nos. 8-13; Decl. Shaw, ECF No. 44-8, Ex. C; Decl. Moseley, ECF No. 44-4 at 9-10 (Ex. B.))

Importantly, the Third Level decision for Appeal no. SATF-C-18-01604 did not exhaust Plaintiff's remedies for Appeal no. SATF-C-18-00605.[20]

### (3)  Grievance No. SATF-C-18-1800, filed on March 26, 2018

On 3-15-18, 3-17-18, 3-21-18, and 3-22-18, massive amounts of contaminated rain water leaks badly from all four walls inside my cell.  Days after, Petitioner alleged there's visible and significant amounts of mold [black mold] which has begun to form around the back cell wall and back cell window.  Because of the build-up of the toxic mold/mildew inside my cell  has caused me asthma and allergy attacks.  This has caused me health problems.  The water intrusion into my cell interior has caused me respiratory problems.  Petitioner alleges that as a result of the significant evidence of rain water settling on top of eight buildings, roof, which has allowed the rain water to settle in (pigeon and bat fecal matter), which contaminates the water that leaks inside my cell making it also unsanitary and unsafe living conditions.  Petitioner alleges that I have written a CDCF 22 form addressing the issue on 3-18-18.  Prison officials' "failure to take reasonable measures to abate the risk" is a violation of CDCR's Operations Manual regarding weekly sanitary inspections, and acting contrary to the principles set forth in Title 15 § 3060, 3064, 3271, 3301 and 3380(a).  Each defendant acted under color of state law.

(Decl. Moseley, ECF No. 44-4 at  56, 58 (Ex. C)).  Plaintiff exhausted his remedies at the Third Level of review for this Appeal  (Decl. Moseley, ECF No. 44-4 at 48-49 (Exh. C)).

### (4)  Grievance No. SATF-C-18-06835, filed on December 2, 2018

Dangerous and unsanitary living conditions.  On 11-21-18; 11-22-18; 11-28-18; and 12-1-2018, massive amounts of contaminated rain water leaked badly from the back of my cell wall.  The institution rehoused me in this cell because it had leaking problems with my last cell.  Plaintiff was not placed on notice that work orders have been placed on this cell also.  I am being forced to live in leaking cells, is not just an inconvenience.  It has adversely affected my mental and physical health and damaged personal property.  I was able to ascertain that the water was actually rain water that leaked into my assigned cell through cracks in the upper pre-fab walls.  On November 29, 2018, G-facility Captain A. Williams toured building while it was raining and I had reported it to her.  She stated, "There's nothing anyone can do about that, but they should be coming to fix the problem.  8 blocks work orders have been backlogged for years, SATF philosophy to the problem is to rehouse Plaintiff to the next "known" leaking cell, for temporary solution to the widespread systemic problem.  I'm also dealing with the extremely low temperature inside the cell and it's become a situation that causes severe mental and emotional stress and depression.  On Dec. 1, 2018, C/Os J. Espino, J. Cortez and T. Ibbs witnessed my cell leaking rain water inside the cell.  Prison officials from building staff on up the chain of command are well aware of this problem.  Yet, no corrective measures were taken.  This constitutes a deliberate indifference to my suffering, which violates my 8th Amend, rights under U.S.C.

---

[20] On page 42 of this order, the court discusses why this Third Level decision did not exhaust Plaintiff's remedies.

(Decl. Moseley, ECF No. 44-4 at 67, 69 (Exh. D.))   This appeal, SATF-C-18-06835, was cancelled as duplicative of appeal no. SATF-C-18-1800.  (Decl. Mosley, ECF No. 44-4 at 65-66 ( Ex. D)).  Therefore, Plaintiff did not exhaust his remedies using this appeal.

The parties do not dispute that Plaintiff exhausted his available administrative remedies using Appeal No. SATF-C-18-1800 concerning in-cell water leaks occurring in March 2018.  In the Third Level Response of Appeal SATF-C-18- 01800, prison officials found that:

"This decision exhausts the administrative remedy available to the appellant within CDCR."

(Exh. C to Moseley Decl. at ECF No. 44-4 at 49; Decl. Pltf. at ECF No. 47 at 25 (Exh. A))

In his opposition [titled declaration] to the motion for summary judgment, Plaintiff argues that:

"Plaintiff's grievance (SATF-C-18-1800) was accepted for review and processed on its merits.  Thus, Defendants cannot now claim by way of a defense to a Section 1983 complaint, that Plaintiff did not exhaust relating to this appeal (SATF-C-18-1800) that was reviewed on the merits."

(Decl. Pltf., ECF No. 47 at 8:26-9:1.)

In addition, the Parties' Undisputed Fact No. 20 states as follows:

"The third level response to SATF-C-18- 01800 found that no violation of any laws, policies, or procedures, with respect to his complaint of in-cell leaks in March 2018 because a work order was submitted for repairs and Plaintiff was rehoused."

(UF No. 20; Exh. C to Moseley Decl. at ECF No. 44-4 at 49.), and Defendants agree in their opposition that:

"Plaintiff submitted an appeal regarding in-cell leaks *in 2018*, SATF-C-18-01800, which was submitted on March 26, 2018, accepted for review, and fully exhausted. (UF Nos. 14-21.)"

(ECF No. 44-2 at 8:5-7.)

Defendants contend that Plaintiff failed to exhaust his remedies in Appeal no. SATF-C-

18-1800 for his claims regarding in-cell leaks before 2018.  Plaintiff has not opposed this argument.  Plaintiff's Appeal no. SATF-C-18-1800 plainly states that "[o]n 3-15-18, 3-17-18, 3-21-18, and 3-22-18, massive amounts of contaminated rain water leaks badly from all four walls inside my cell," and the appeal does not address conditions in his cell occurring during any other date, year, or time period.  (Decl. Pltf., ECF No. 47 at 16-19 (Exh. A)).

Based on this evidence, the court finds that Plaintiff exhausted his administrative remedies for his claims of in-cell water leakage occurring in March 2018, but he failed to exhaust his remedies for in-cell leakage occurring ***before 2018***.

## IV.   EIGHTH AMENDMENT CLAIMS

The Court next considers the merits of Plaintiff's Eighth Amendment claims against Defendants Milam and Sherman.

### A.   Summary Judgment Standard

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  The dispute must be over a fact that is material, i.e., one that makes a difference in the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question.  Id.  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo

Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). The court must liberally construe *pro se* pleadings.[21]

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted). Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. American Int'l Group, Inc. v. American Int'l Bank, 926 F.2d 829, 836 (9th Cir. 1991) (citing Celotex, 477 U.S. at 322, 106 S.Ct. 2548). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The court determines only whether there is a genuine issue for trial. Thomas, 611 F.3d at 1150 (quotation marks and citations omitted).

///

In arriving at these findings and recommendations, the court carefully reviewed and

---

[21] In light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, and Rule 8(e) of the Federal Rules of Civil Procedure that "[p]leadings shall be construed so as to do justice," see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.

considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**B.      Statement Of Undisputed Facts – Deliberate Indifference Claim**

In accordance with Local Rule 260(a), on December 13, 2021, Defendants Sherman and Milam submitted the following Statement of Undisputed Facts with references to the supporting evidence.  (ECF No. 44-3.)  On January 31, 2022, Plaintiff submitted the following Responses to Defendants' Statement of Undisputed Material Facts.  (ECF No. 48.)  Unless otherwise noted, the following facts are undisputed by the parties or as determined by the court based on a thorough review of the record.

|  |  |
|---|---|
| **DEFENDANT R. MILAM** | |
| 28. R. Milam was a Supervisor of Building Trades at the California Substance Abuse Treatment Facility & State Prison, Corcoran (SATF), and was responsible for facility maintenance at the prison beginning in 2015. (Decl. Milam ¶ 2.) | Admitted.  (Decl Rayford, Ex. A, B, C, D) |
| 29. Milam had no responsibilities or authority outside of his role as Supervisor of Building Trades that would affect Plaintiff or his housing. (Decl. Milam ¶ 2.) | Denied.   No repairs was done on Plaintiff cells. (Deny) Disputed facts. (Decl. Rayford, Ex. A, B, C, D.)[22] |

---

[22] In Plaintiff's response to Fact #29, Plaintiff has not disputed any part of Fact #29 as submitted by Defendants.  Therefore, Fact #29 is Undisputed.

| | |
|---|---|
| 30. Whenever work orders were submitted regarding roof leaks in the prison, Milam or other maintenance staff would inspect the leak and patch it. (Decl. Milam ¶ 3.) | Denied: no repairs was ever done by Milam or mold removed. Disputed facts: deny. (Decl. Rayford)[23] |
| 31. However, due to the number of leaks throughout the prison, the time it takes to repair them, and staffing and budget issues, work orders were prioritized by the severity of leaks. (Decl. Milam ¶ 3.) | Disputed facts: (Decl. Rayford Ex A, B, C, D) 'It is not clear, however, whether these piecemeal steps, supported by little documentation, constitute an adequate and durable solution.' (deny).[24] |
| 32. Milam did his best to address these leaks, working overtime and on weekends, but a permanent fix required replacement of the entire roof and requests for funding for roof replacement were already made prior to when Milam assumed responsibilities for facility maintenance. (Decl. Milam ¶ 4.) | Disputed facts: "It is not clear, however, whether these piecemeal steps, supported by little documentation, constitute an adequate and durable solution." (Decl. Rayford, Ex. A, B, C, D, E) (Deny.)[25] |

---

[23] Plaintiff disputes Fact #30 Defendant Milam's statement in his declaration that he or other maintenance staff inspected and patched roof leaks.  Plaintiff's declaration is not verified and thus Fact #30 remains Undisputed.

[24] In Plaintiff's response to Fact #31, Plaintiff has not disputed any part of Fact #31 as submitted by Defendants.  Therefore, Fact #31 remains Undisputed.

[25] In Plaintiff's response to Fact #32, Plaintiff has not disputed any part of Fact #32 as submitted by Defendants.  Therefore, Fact #32 remains Undisputed.

| | |
|---|---|
| 33. Milam had no control over the funding for roof replacement and did the best he could to address leaks within the prison with the resources available to him while awaiting approval and funding to replace the roofs. (Decl. Milam ¶ 5.) | Disputed facts: All the resources that was available to Milam went to overtime pay that fatten his pockets. Authorized by Defendant Sherman (Decl. Ex. A, B, C, D, E) (Decl. Rayford) Deny.[26] |
| 34. SATF received funding for roof replacement in 2018, including replacement of the roofs for Plaintiff's housing unit on Facility C. The prison began replacing the roofs on Facility C in 2019 and has now completed repairs. (Decl. Milam ¶ 6.) | Plaintiff has (Decl. Rayford Ex. A, B, C) No evidence – of this. Defendant Richard Milam stated on 4.20.18 that Plant Operations will be doing roof repairs on C7/8 the weekend of 4-28-18 & 4-29- 18. See Pet., Ex. C at p. 1-2. Deny.[27] |
| **DEFENDANT S. SHERMAN** | |
| 35. S. Sherman became Warden at the California Substance Abuse Treatment Facility & State Prison, Corcoran (SATF), in 2013, and retired in 2020. (Decl. Sherman ¶ 2.) | Admitted. |

---

[26] In Plaintiff's response to Fact #33, Plaintiff has not disputed any part of Fact #33 as submitted by Defendants.  Therefore, Fact #33 remains Undisputed.

[27] In Plaintiff's response to Fact #34, Plaintiff has not disputed any part of Fact #34 as submitted by Defendants.  Therefore, Fact #34 remains Undisputed.

| | |
|---|---|
| 36. Sherman was aware of roof leaks within the prison, but there were approximately 4,900 to 5,200 inmates at the prison at any given time and Sherman did not have any specific knowledge as to the issues affecting Plaintiff outside of matters on which Plaintiff submitted appeals and pursued through institutional level review. (Decl. Sherman ¶ 3.) | Disputed facts: The rest is disputed (Admitted: Sherman was aware of the leaks within the prison since his tenure and did nothing to abate the risk.) (Decl. Rayford, Ex. A, B, C, D) (Decl. Ex. A, B, C, D) Plaintiff Deny in part.[28] |
| 37. Sherman instructed all staff to complete work orders to repair any cell that leaked, to rehouse inmates adversely impacted by leaking cells, and to provide cleaning supplies as needed to clean cells affected by leaking. He also authorized overtime to complete repairs. (Decl. Sherman ¶ 4.) | Disputed facts: only when 602'ed. Not when the building staff visibly seen the dangerous and unsanitary living conditions. Once a month they gave cleaning supplies. Not when it rained (Decl. Rayford Ex. A, B, C, D, E) Plaintiff Deny.[29] |
| 38. Moreover, Sherman confirmed with staff that these steps were followed in response to the grievance Plaintiff submitted regarding leaks in 2018, SATF-C-18- 1800. (Decl. Sherman ¶ 5.) | Disputed Facts. Supported by little documentation. (Decl. Rayford Ex. A, B, C, D, E) Plaintiff Deny.[30] |

---

[28] Plaintiff has not indicated where in his 57 pages of exhibits his supporting evidence can be found.  Therefore, Fact #36 remains Undisputed.

[29] Plaintiff has not indicated where in his 57 pages of exhibits his supporting evidence can be found.  Therefore, Fact #37 remains Undisputed.

[30] Plaintiff has not indicated where in his 57 pages of exhibits his supporting evidence can be found.  Therefore, Fact #38 remains Undisputed.

| | |
|---|---|
| 39. However, due to the number of leaks throughout the prison, the time it takes to repair them, and staffing and budget issues, work orders to repair these leaks had to be prioritized by severity. (Decl. Sherman ¶ 6.) | Admitted facts. (Decl. Rayford, Ex. A, B, C, D, E) Plaintiff Deny. |
| 40. Moreover, to permanently repair the problem, the roofs needed to be replaced. (Decl. Sherman ¶ 6.) | Disputed facts (Decl. Rayford Ex. A, B, C, D, E) Plaintiff Deny. |
| 41. A request for funding for roof replacement, including over $5 million for Facility C roof replacement, was already under submission and pending approval as of the 2011-2012 fiscal year. (Decl. Sherman ¶ 7.) | Disputed Facts. Supported by little documentation. Plaintiff Deny.[31] |
| 42. However, Sherman had no control over the approval or funding of roof replacement. Instead, the funding had to be approved through the State of California's budgetary process. (Decl. Sherman ¶ 7.) | "Disputed Facts. Supported by little documentation. (Decl. Rayford Ex. A, B, C, D) Plaintiff Deny.[32] |

---

[31] Plaintiff has not indicated which part of Fact #41 he disputes, nor has he cited to any supporting evidence. Therefore, Fact #41 remains Undisputed.

[32] Plaintiff has not indicated which part of Fact #42 he disputes, nor has he indicated where in his 57 pages of exhibits his supporting evidence can be found. Therefore, Fact #42 remains Undisputed.

| | |
|---|---|
| 43. Sherman continued to direct staff to complete work orders for leaking cells, to prioritize repairs based on the severity of leaks, to rehouse inmates adversely impacted by leaking cells, and to provide cleaning supplies as needed while awaiting approval and funding to repair the roofs. (Decl. Sherman ¶ 8.) | Disputed facts: (Decl. Rayford, Ex. A, B.) Inmates had to place a 602 in dispute building officers witnessing the dangerous and unsanitary living conditions during defendant Sherman tenure. Plaintiff Deny.[33] |
| 44. SATF received funding for roof replacement in 2018, including replacement of the roofs on Facility C, where Plaintiff was housed. The prison began replacing the roofs on Facility C in 2019 and has now completed repairs. (Decl. Sherman ¶ 9.) | Disputed facts supported by little documentation that the cells do not leak still. See Pet., Ex. C at p. 1-2 Plaintiff Deny.[34] |

### C.   Conditions Of Confinement – Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.

---

[33] Plaintiff has not disputed the fact that Sherman directed staff to follow certain instructions he gave as stated in Fact #43.  Therefore, Fact #43 remains Undisputed.

[34] Plaintiff's cited evidence (Exh. C at 1, 2) does not address the repairs made in 2019, which are the subject of Fact #44.  Therefore, Fact #44 remains Undisputed.

Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas, 611 F.3d at 1150-51; Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834.  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson, 217 F.3d at 731.  Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992).  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  Johnson, 217 F.3d at 731.  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

Prisoners have a right to sanitation. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). When considering the

conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978). "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern, 45 F.3d 1310, 1314, as amended, 75 F.3d 448 (9th Cir. 1995). The failure to provide adequate cell cleaning supplies may also amount to unconstitutional punishment where that failure "seriously threatens" the inmate's health.  Hoptowit v. Spellman, 753 F.3d 779, 783-85 (9th Cir. 1985) ("Failure to provide adequate cell cleaning supplies, under circumstances [presented in the case], deprives inmates of tools necessary to maintain minimally sanitary cells, seriously threatens their health, and amounts to a violation of the Eighth Amendment."). A conditions of confinement claim may also arise from the type of "egregious circumstances" alleged by plaintiff in this matter. Walker v. Schult, 717 F.3d 119, 127 (2nd Cir. 2013) (citing, inter alia, LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir.1972)) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."); Gaston v. Coughlin, 249 F.3d 156, 165-66 (2d Cir. 2001) (inmate stated an Eighth Amendment claim where the area in front of his cell "was filled with human feces, urine, and sewage water" for several consecutive days); Wright v. McMann, 387 F.2d 519, 521-22, 526 (2d Cir. 1967) (placement in cell for thirty-three days that was "fetid and reeking from the stench of the bodily wastes of previous occupants which...covered the floor, the sink, and the toilet," combined with other conditions, would violate the Eighth Amendment).

### D.    Defendants' Position

Defendants Milam and Sherman argue that they were not deliberately indifferent to the conditions in Plaintiff's housing unit.  Pursuant to Defendants' Undisputed Fact, Defendants took all steps available to them to address the leaking roofs at SATF, (UF Nos. 28-44; Decl. Milam ¶¶2-6, ECF No. 44-7), but there were multiple roof leaks throughout the prison and, because of staffing and budget issues, staff were unable to keep up with the work orders submitted for roof leaks, which were time consuming due to the severe damage, (UF Nos. 16, 31, 39; Decl. Shaw, Exh. D, ECF No. 44-8; Decl. Milam ¶3, ECF No. 44-7; Decl. Sherman ¶6, ECF No. 44-9).

Defendants state that the prison did not have funding to replace the roofs at that time, but a request for approval and funding for roof replacement, including over $5 million for the Facility C roof replacement, was already under submission and pending approval. (UF No. 32, 40, 41; Decl. Milam ¶4, ECF No. 44-7; Decl. Sherman ¶¶6, 7, ECF No. 44-9.)  Also, Defendants had no control over the approval or funding for roof replacement because funding had to be approved through the State of California's budgetary process. (UF Nos. 33, 42; Decl. Milam ¶5, ECF No. 44-7; Decl. Sherman ¶¶6, 7, ECF No. 44-9.) Ultimately, the legislature approved funding for roof replacement at SATF, and the roofs where Plaintiff was housed have since been repaired. (UF Nos. 24, 34, 44; Decl. Sherman Ex. E, ECF No. 44-9; Decl. Milam ¶6, ECF No. 44-7); Decl. Sherman ¶9, ECF No. 44-9.)

As evidence, Defendants offer their declarations and the institution's response to Plaintiff's Appeals No. SATF-C-18-1800.

Defendant Milam declares as follows:

"I was a Supervisor of Building Trades at the California Substance Abuse Treatment Facility & State Prison, Corcoran (SATF), and was responsible for facility maintenance at the prison beginning in 2015. I had no responsibilities or authority outside of this role that would affect Plaintiff or his housing.  Whenever work orders were submitted regarding roof leaks in the prison, I or other maintenance staff would inspect the leak and patch it. However, due to the number of leaks throughout the prison, the time it takes to repair them, and staffing and budget issues, work orders were prioritized by the severity of leaks.  I did my best to address these leaks, working overtime and on weekends, but a permanent fix required replacement of the entire roof and requests for funding for roof replacement were already made prior to when I assumed responsibilities for facility maintenance.  I had no control over the funding for roof replacement and did the best I could to address leaks within the prison with the resources available to me while awaiting approval and funding to replace the roofs. SATF received funding for roof replacement in 2018, including replacement of the roofs for

Plaintiff's housing unit, Facility C. The prison began replacing the roofs on Facility C in 2019 and has now completed repairs."

(Milam Decl., ECF No. 44-7.)

Defendant Sherman declares as follows:

"I became Warden at the California Substance Abuse Treatment Facility & State Prison, Corcoran (SATF), in 2013 and retired in 2020. I was aware of roof leaks within the prison, but there were approximately 4,900 to 5,200 inmates at the prison at any given time, and I did not have any specific knowledge as to the issues affecting Plaintiff outside of matters on which Plaintiff submitted appeals and pursued through institutional levels of review. I instructed all staff to complete work orders to repair any cell that leaked. to rehouse inmates adversely impacted by leaking cells, and to provide cleaning supplies as needed to clean cells affected by leaking. I also authorized overtime to complete repairs. Moreover, I confirmed with staff that these steps were followed in response to the grievance Plaintiff submitted regarding leaks in 2018, SATF-18-C-1800. However, due to the number of leaks throughout the prison, the time it takes to repair them, and staffing and budget issues, work orders to repair these leaks had to be prioritized by severity. Moreover, to permanently repair the problem, the roofs needed to be replaced. A request for approval and funding for roof replacement, including over $5 million for Facility C roof replacement, was already under submission and pending approval as of the 2011-2012 fiscal year. However, I had no control over the approval or funding of roof replacement Instead, the funding had to be approved through the State of California's budgetary process. I continued to direct staff to complete work orders for leaking cells, to prioritize repairs based on the severity of leaks, to rehouse inmates adversely impacted by leaking cells. and to provide cleaning supplies as needed while awaiting approval and funding to repair the roofs. SATF received funding for roof replacement in 2018, including replacement of the roofs where Plaintiff was

housed, Facility C. The prison began replacing the roofs on Facility C in 2019 and

has now completed repairs."

In support of their argument, Defendants also submit as evidence prison officials'

response at the First Level of review to Plaintiff's Appeal No. SATF-C-18-1800.

"[T]here are multiple roof leaks throughout the institution.  Due to staffing and

budget issues, Plant Operations cannot keep up with the work orders submitted

for roof leaks.  Most of these repairs are time consuming due to the severe damage;

the work orders are prioritized by the severity of the leaks."

(Shaw Decl., ECF No. 44-8 at 46-49.)

### E.   **Plaintiff's Opposition**

Plaintiff contends that Defendants have long been aware of the unsanitary conditions in

Facility C cells at SATF, because Plaintiff has informed them repeatedly.  Plaintiff submits

documentary evidence that he submitted CDCR 22 requests in 2016 concerning rain water on the

floor that leaks threw the prison's infrastructure, to which Defendant Milam responded that a

"special repair request had been turned in to Sacramento to replace roofs, [but] work was stopped

for safety reasons [and] it is unknown when we will be able to proceed."  (ECF No. 47 at 413-

17, 27.)  On March 18, 2018, Plaintiff submitted another CDCR 22 request to Warden Stu

Sherman, Richard Milam and others that "there are massive amounts of leaks in 8 building, cell

201, which is causing hazardous water containing pigeon and bat guano to fall onto the cell

floor."  (ECF No. 47 at 29.)  In response to his CDCR 22 request, Plaintiff received a

memorandum stating that "CSATF has multiple roof leaks throughout the institution.  Due to

staffing and budget issues Plant Operations cannot keep up with the work orders submitted for

leaking roofs."  (ECF No. 47 at 30.)

Plaintiff contends that there were sufficient factual allegations contained in his 602

Appeal no. SATF-C-18-1800 to place officials on notice of an alleged Eighth Amendment

violation and the development of mold/mildew inside of his cells, risking harm to Plaintiff's

asthma, COPD, and allergies, to wit:

///

"Because of the build-up of the toxic mold/mildew inside my cell.  Has caused

me asthma and allergy attacks.  This has caused me health problems.  The water

intrusion into my cell interior has caused me respiratory problems."

(ECF No. 47 at 18.)

Plaintiff disputes Defendants' argument that they provided him adequate shelter, sanitation, and personal safety.  Plaintiff alleges that Defendants have admitted that they only placed maintenance work orders throughout their tenure as Warden at SATF and Supervisor of Building Trades at SATF, or at best rehoused Plaintiff to another leak-prone cell.  As evidence Plaintiff provides evidence that Defendant Sherman "instructed all staff to complete work orders to repair any cell that leaked, to rehouse inmates adversely impacted by leaking cells, and to provide cleaning supplies as needed to clean cells affected by leaking."  (UF No. 37; Decl. Sherman, ECF No. 44-9 at 2 ¶4.)

## V.   DISCUSSION

### A.   <u>Sufficiently Serious Deprivation</u>

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  <u>Farmer</u>, 511 U.S. at 834; <u>Hudson</u>, 503 U.S. at 9.  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  <u>Johnson</u>, 217 F.3d at 731.

The more basic the need, the shorter the time it can be withheld.  <u>See</u> <u>id.</u>  Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. <u>Id.</u>  732–733.  <u>See</u>, <u>e.g.</u>, <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1042-43 (9th Cir. 2005) (holding that plaintiff's allegation that he was confined in administrative segregation for nine months, during which time he was deprived of clean running water, was sufficient to make out a conditions of confinement claim); <u>see</u> <u>Preayer v. Ryan</u>, 2016 WL 5341177 (D. Ariz. 2016) (lack of running

///

water for two months sufficient to satisfy the objective component of the deliberate indifferent analysis).

Here, the parties do not dispute that whenever it rained at SATF in 2018 the in-cell water leaks in Plaintiff's cell rose to the level of a sufficiently serious deprivation to make out a conditions of confinement claim.

### B.   Aware of a Substantial Risk of Serious Harm

A prison official does not act in a deliberately indifferent manner unless the official "*knows of* and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 834 (1994) (emphasis added). The "official must both *be aware of facts* from which the inference could be drawn that a substantial risk of serious harm exists, and *he must also draw that inference*." Id. at 837 (emphasis added).

Defendants Milam and Sherman have both admitted they were aware that water was leaking into inmates' cells when it rained, (Milam Decl., ECF No. 44-7; Shaw Decl., ECF No. 44-9), and Plaintiff has shown that that he placed Defendants on notice of the adverse conditions. (ECF No. 47 at 13-17, 27.) However, the court finds no evidence that either of the Defendants drew the inference that Plaintiff was at substantial risk of serious harm because of the conditions. Thus, the court finds that Defendants were aware of the adverse conditions but may not have drawn the inference that Plaintiff was at excessive risk of harm.

### C.   Deliberate Indifference

The Supreme Court has found that prison officials are not deliberately indifferent to a prisoner's medical needs unless they act wantonly, see Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976), and whether an official's conduct "can be characterized as 'wanton' depends upon the constraints facing [him]," Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321 (1991). Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014). The Court has also held that, even if an official knows of a substantial risk, he is not liable "if [he] responded reasonably." Farmer, 511 U.S. at 844. Id. What is reasonable depends on the circumstances, which normally constrain what actions a state official can take. Id.

///

There is no indication in Plaintiff's evidence that either of the two Defendants had the state of mind necessary to support a claim for deliberate indifference. An official who knows of a substantial risk of harm to an inmate's health or safety but *acts reasonably under the circumstances* will not be held liable under the cruel and unusual punishment clause, even if the threatened harm results. See Farmer, 511 U.S. at 843 (emphasis added).

Even if Defendants knew Plaintiff was at an excessive risk of harm, the court finds no evidence that any of the Defendants acted unreasonably. There is no evidence that Defendants were responsible for the water leaking into the cells, but more importantly, they both lacked the financial authorization authority to resolve the water leaks as this depended on funding approval which was not within their control. Defendants have each declared that they did what they could to remedy the problems, considering the resources available to them. (Milam Decl., ECF No. 44-7 at ¶4; Sherman Decl., ECF No. 44-9 ¶¶4,5.) Plaintiff states that he was moved to another cell, but that all of the cells were being flooded with water. As stated above, neither of the Defendants had control over the funding for roof replacement, they had to wait for the funding to be approved through the State of California's budgetary process. (UF Nos. 33, 42; Decl. Milam ¶5, ECF No. 44-7; Decl. Sherman ¶¶6, 7, ECF No. 44-9.)

Therefore, the court finds that Defendants did not act with deliberate indifference to the adverse conditions of confinement suffered by Plaintiff.

**D.   Caused Harm**

To state a deliberate indifference claim, a causal relationship between Defendants' acts and Plaintiff's alleged damages must be shown.

Here, Plaintiff alleges that he suffered from respiratory problems, asthma, and allergy attacks because of the mold and mildew on the walls of his cell. However, sweeping conclusory allegations will not suffice to prevent summary judgment. See Berg v. Kincheloe, 794 F.2d 457, 460 (9th Cir. 1986). Plaintiff's evidence does not support his assertion that his respiratory problems resulted from the condition of his cell.

Moreover, under Federal Rules of Evidence 701, Plaintiff, a layperson, may not offer medical opinions or conclusions based on his symptoms. Plaintiff's opinion that he developed

respiratory problems because he was housed in a cell with water leaks is evidence of what he believes, not of what caused the symptoms. Only an expert witness with specialized knowledge may determine whether the conditions in Plaintiff's cell was the cause of Plaintiff's symptoms or medical condition.

Because Plaintiff has not provided evidence that his medical symptoms were due to the water leaks in his cell, or that the condition of his cell was caused by Defendants, Plaintiff fails to establish that he suffered any damages in this case.

### E.   Plaintiff's Failure to Exhaust Appeal No. SATF-C-18-00605

Earlier in this order, the court found that Plaintiff did not exhaust his remedies when he received a Third Level decision for Appeal No. SATF-C-18-01064. Ordinarily, a final decision at the Third Level satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a). Cal.Code Regs tit. 15 § 3084.7(d)(3) (2018); see Lira, 427 F.3d at 1166. However, this is not the case when the Third Level decision is ***procedural*** in nature and not on the ***merits*** of the appeal. The Ninth Circuit has recognized that, where a prisoner fails to administratively appeal the procedural cancellation of a grievance at the third level of review, that prisoner has failed to exhaust. (Johnson v. Davis, No. 20-CV-04023-LHK, 2021 U.S.Dist.LEXIS 241415, at *17-18. (N.D.Cal. Dec. 3, 2021,) (citing see Wilson v. Zubiate, 718 F. App'x 479, 481 (9th Cir. 2017) (affirming district court grant of summary judgment where appeal was cancelled at the third level for lack of jurisdiction, and plaintiff failed to appeal cancellation). Here, the decision to deny reversal of the cancellation was a procedural decision which importantly did not end the remedies available to Plaintiff. A remedy is unavailable if: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Hunter v. Sorheim No. 2:15-CV-9253-DMG (SK)) 2018 U.S.Dist.LEXIS 49714, at *5-6 (C.D.Cal. Feb. 27, 2018) (quoting Ross v. Blake, 136 S. Ct. 632, 643-44 (2016). When Appeal SATF-V-18-01604 was denied, Plaintiff was not at a "dead end" as he still had remedies available to him. But here, Plaintiff did not take up the

challenge, and therefore he failed to exhaust his remedies. This left Appeal no. SATF-C-18-1800 as the only appeal in which Plaintiff exhausted his remedies concerning in-cell water leaks occurring in March 2018.

**F.**    **Plaintiff is entitled to neither injunctive relief nor monetary damages**

In the Second Amended Complaint, Plaintiff requested as relief declaratory judgment, injunctive relief, monetary damages including punitive damages, costs of suit, and reasonable attorney's fees. (ECF No. 24 at 33.) Plaintiff was advised in the Court's screening order issued on January 28, 2021, that based on the nature of claims at issue in this action, he was not entitled to declaratory relief, injunctive relief, or attorney's fees, and was therefore confined to seeking money damages for the violations of his federal rights. (ECF No. 26 at 17:18-20.) Of significant additional note, subsequent to that order Plaintiff notified the court that he was transferred from SATF to Corcoran State Prison in Corcoran, California. (ECF No. 32.) Plaintiff's move from SATF mooted Plaintiff's claims for injunctive relief in this case.  See Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (*per curiam*) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]"); Andrews v. Cervantes, 493 F.3d 1047, 1053 (9th Cir. 2007).  Here, Plaintiff has demonstrated no reasonable expectation of returning to SATF; therefore, his claims for injunctive relief relating to SATF's policies are moot.

Nor is Plaintiff entitled to monetary damages in this case because of the so-called "**cost defense**," a defense recognized by the Ninth Circuit. See, Atayde v. Napa State Hosp., 16-cv-00398-DAD-SAB, 2022 U.S. Dist. Lexis 75399 at *19 (E.D. Cal. April 22, 2022). Defendants argue that they did not act with deliberate indifference because they did not have the ability to repair the infrastructure at SATF that allegedly caused the in-cell leaks. Evidence shows that indeed Defendants had no control over the approval or funding for roof replacement at SATF because funding had to be approved through the State of California's budgetary process. (Milam Decl., ECF No. 44-7 at ¶4; Sherman Decl., ECF No. 44-9 ¶¶4,5.) This fact underscores that Defendants were not deliberately indifferent to Plaintiff's risk of harm because Defendants acted reasonably in the face of the adverse conditions of confinement experienced by Plaintiff.

Resource availability is highly relevant to a claim seeking damages against prison officials. (Id.) (citing Peralta, 744 F.3d 1076. Therefore, Plaintiff is not entitled to monetary damages as relief in this case.

Based on the foregoing, the court finds that Defendants are entitled to summary judgment, because due to his transfer away from SATF, Plaintiff is unable proceed with claims for injunctive relief as shown above, and he is additionally unable to claim monetary damages for deliberate indifference under the "**cost defense**." Therefore, the court shall recommend that Defendants' motion for summary judgment be granted in full

### G.   Immunity

Defendants argue that they are entitled to qualified immunity for their actions against Plaintiff in this case. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, 575 U.S. 822, 825, 135 S.Ct. 2042, 2044 (2015) quoting Reichle v. Howards, 566 U. S. 658, 132 S.Ct. 2088, 2093 (2012). Qualified immunity analysis requires two prongs of inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014) quoting Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009).

As discussed above, the court has found that Defendants did not act with deliberate indifference, nor did they violate Plaintiffs constitutional rights. Therefore, the issue of immunity shall not be addressed.

### VI.   CONCLUSION AND RECOMMENDATIONS

The court finds, based on the record before it, that Plaintiff exhausted his available administrative remedies required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) for his claims in this case against Defendants Milam and Sherman arising in 2018. The court also finds that Defendants have submitted evidence that they did not act with deliberate indifference concerning the adverse conditions in Plaintiff's cell, and Plaintiff did not produce any evidence

in response that created a disputed issue of material fact.  Accordingly, Defendants are entitled to judgment on Plaintiff's Eighth Amendment claims against them, and Defendants' motion for summary judgment, filed on December 13, 2021, should be granted.

Accordingly, **IT IS HEREBY RECOMMENDED that:**

1.      Defendants' motion for summary judgment, filed on December 13, 2021, be **GRANTED;** and

2.      Summary judgment be entered in favor of Defendants, closing this case.

These amended findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 25, 2022**                    **/s/ Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE

46